```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION
```

**ROBERT W. AVERY**                                              **PLAINTIFF**

        v.          Civil No. 07-5111

**SHERIFF KEITH FERGUSON;
MAJOR DRAKE; DETECTIVE
CHRIS SPARKS; DETECTIVE
ROBERT HOLLY; SGT. TOMLIN;
DEPUTY CARLTON; SGT. JARED
CRABTREE; NATHAN ATCHISON;
TRAVIS NEWELL; HAROLD GAGE;
RICK HOLLAND; JOSH CHAPMAN;
RICHARD CONNER; CHARLES
ROBBINS; ERIC WARZECHA;
TIM SRADER; WADE PORTER;
CAPTAIN JONES; and CAPTAIN
HUNTER PETRAY**                                                 **DEFENDANTS**

## O R D E R

Now on this 12th day of March, 2009, come on for consideration the following:

    *   defendants' **Motion For Summary Judgment** (document #62);

    *   plaintiff's **Motion For Injunctive Relief** (document #88);

    *   the **Magistrate Judge's Report And Recommendation** (document #97)("R&R");

    *   plaintiff's **Objection To Magistrate Judge's Report And Recommendation** (document #98); and

    *   plaintiff's **Objection To Magistrate Judge's Report And Recommendation Denying The Motion For Injunctive Relief** (document #99),

and the Court, being well and sufficiently advised, finds and

orders as follows:

    1.   In this civil rights action, plaintiff asserts four claims:

    *   that the Benton County SWAT Team illegally entered a house located at 10810 Winningham Road, Gentry, Arkansas (the "Winningham Road House"), on January 16, 2007, in order to arrest him;

    *   that excessive force was used against him at the time of this arrest;

    *   that defendants Ferguson, Drake, and Jones, commanding officers at the scene of this arrest, did nothing to prevent the use of excessive force;

    *   that excessive force was used against him at the Benton County Detention Center ("BCDC") on January 18, 2007; and

    *   that defendant Petray, with knowledge of violent tendencies on the part of Carlton and Tomlin, showed deliberate indifference toward his safety at BCDC.

    2.   The Magistrate Judge reported that fact issues exist with regard to the two excessive force claims, and recommended that summary judgment be denied as to them.  He recommended granting summary judgment as to the claims of illegal entry, failure to prevent use of excessive force, and deliberate indifference.  He also recommended denial of plaintiff's motion for injunctive relief.

Plaintiff objects to each of the Magistrate Judge's recommendations that are adverse to him, and the Court will examine his objections to each cause of action in turn.

3. The illegal entry claim turns on whether the SWAT Team defendants could legally enter the Winningham Road House where they arrested plaintiff pursuant to an arrest warrant. It is axiomatic that a search may legally be undertaken with the consent of one with authority to grant consent. Consent from a third party with common authority -- or whom a government agent reasonably believes to have common authority -- will suffice. Common authority is "a function of mutual use, joint access, and control, and is a question of fact." **U.S. v. Hinkle**, **456 F.3d 836, 840 (8th Cir. 2006)**(citation and internal quotation marks omitted).

Defendants justify their entry on permission said to have been granted to them by George Winningham. An Incident Report completed by Benton County Sheriff's Investigator Robert Holly states that before the search which led to plaintiff's arrest, Sergeant Dennis Schumacher contacted "the land owner George Winningham," who "told him there should not be anyone in the home, and he gave the Sheriff's Office permission to enter the home."

An Incident Report completed by Benton County Sheriff's Investigator Brandon Rogers states that Barbara Winningham told him on January 16, 2007, that she owned the Winningham Road House,

had owned it for a long time, and that no one had permission to be staying there.[1]

Plaintiff contends that Tammy Adams ("Adams") lived in the Winningham Road House with George Winningham's permission, and that her consent to search was required but not given.  He relies on Adams' Deposition Upon Written Questions to support this contention.  That document does not, however, give plaintiff the support he seeks;  it tends more to the opposite.  Question #1 asks "[y]ou lived at 10810 Winningham rd. Gentry Ar. off and on with the permission of George Winningham for how many years?"  The answer given:  "8 yrs."  Question #26 asks "was the plaintiff living with you at 10810 Winningham Rd. Gentry, Arkansas?"  The answer given:  "no neither one of us were living there."

These answers tend to show that Adams had at times lived in the Winningham Road House, but did not live there when the search took place.  They also tend to show that George Winningham had authority to allow use of the Winningham Road House, and thus tend to support a reasonable belief in his common authority.

When the Court considers all the evidence on the issue of consent to search, it finds no genuine dispute as to the fact that Benton County Sheriff's agents could have reasonably believed George Winningham had common authority to consent to the search of the Winningham Road House.  That being the case, the search was

---

[1] Barbara Winningham gave written consent to search, but this took place after the search during which plaintiff was arrested, and thus does not alter the analysis.

consensual, and plaintiff's objections to the recommendation concerning his illegal search claim will, therefore, be overruled.

4. Plaintiff's claims against Ferguson, Drake, and Jones -- commanding officers at the scene of his arrest -- and Petray -- BCDC jail administrator, cannot be predicated on a theory of vicarious liability. They depend upon a showing of actual involvement in the alleged constitutional torts, either in a direct or supervisory capacity:

> A supervisor may be held individually liable under §1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation. The standard of liability for failure to train is deliberate indifference. The standard of liability for failure to supervise is "demonstrated deliberate indifference or tacit authorization of the offensive acts."

**Brockington v. City of Sherwood, Ark., 503 F.3d 667, 673 (8th Cir. 2007)**(internal citations omitted).

The claim against Ferguson, Drake, and Jones is that they supervised the SWAT team who arrested plaintiff on January 16, 2007; that the SWAT team acted under their "direct orders"; and that they "could have prevented" the alleged use of excessive force. The claim against Petray is that he was the "Jail Commander" on January 18, 2007, when Tomlin and Carlton were alleged to have used excessive force against plaintiff; that he was the supervisor of Tomlin and Carlton; and that he "had prior knowledge of the violent tendencies" of Tomlin and Carlton because he "answers all grievances at the B.C.D.C."

In his support, plaintiff contends that the number of lawsuits that have been filed against various defendants "shows that there has been a trend of abuse" at BCDC and "a custom of abusive treatment allowed to take place" by these defendants. He acknowledges that "many of these cases have been dismissed," but argues that "it is clear that a problem does exist there is no possible way the defendants could be accused of so many cases of wrong doing and not be guilty of some. . . ." This, of course, is pure speculation, and will not support any of plaintiff's claims. There being nothing more offered in support of plaintiff's claim against Petray, his objections as to that claim will be overruled.

Plaintiff also contends that the personnel files of several of the individual SWAT team members show that they were untrained or had little training at the time of his arrest. This evidence, coupled with the fact that Ferguson, Drake, and Jones were admittedly "commanders present at the scene" of plaintiff's arrest, is some evidence that Ferguson, Drake, and Jones may have supervisory and/or training liability for events at the scene. Plaintiff's objections as to his claim against these defendants will be sustained, and the R&R will not be adopted as to them.

5.   The motion for injunctive relief relates to plaintiff's contention that he is being picked up at his place of incarceration and brought to BCDC for court appearances overly in advance of those appearances, and held at BCDC overly long after

those appearances. This is said to be a tactic on the part of defendants to retaliate against him for filing claims against them. He claims that this tactic could cause him to miss deadlines, and deprives him of the use of a law library for the time he is away from prison because BCDC does not have a law library. He also claims that he is placed in a cell with other detainees who have communicable diseases, thus placing his health at risk.

In considering whether to issue a preliminary injunction, courts must consider four factors:

* the threat of irreparable harm to the moving party;
* the balance between this harm and the injury that an injunction would inflict on other parties;
* the probability of movant's success on the merits; and
* the public interest.

**Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981).**

Under this test, plaintiff's objections must be overruled. While he alleges harm, he does not allege irreparable harm, and his suggestion that the Court intervene and direct the operations of BCDC as to him is untenable from the standpoint of BCDC. "It is settled doctrine that except in extreme cases, the courts should not interfere with the internal operations of a prison." **Rhodes v. Sigler, 448 F.2d 1237, 1238 (8th Cir. 1971).** Nor is the

public well served when the courts intervene to direct jail or prison operations. Plaintiff's objections as to this claim will, therefore, be overruled.

**IT IS THEREFORE ORDERED** that the **Magistrate Judge's Report And Recommendation** (document #97) is **adopted in part and not adopted in part**. It is **not adopted** insofar as it recommends dismissal of plaintiff's claims for damages resulting from failure to train or supervise on the part of defendants Ferguson, Drake, and Jones. It is **adopted** in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's **Objection To Magistrate Judge's Report And Recommendation** (document #98) is **sustained in part and overruled in part**. The Objection is **sustained** with regard to his claims of failure to train or supervise on the part of defendants Ferguson, Drake, and Jones, and **overruled** in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's **Objection To Magistrate Judge's Report And Recommendation Denying The Motion For Injunctive Relief** (document #99) is **overruled**.

**IT IS FURTHER ORDERED** that defendants' **Motion For Summary Judgment** (document #62) is **granted in part and denied in part**. The motion is **granted** insofar as it seeks dismissal of plaintiff's claims for illegal entry to effectuate his arrest, and for damages for failure to supervise on the part of defendant Hunter Petray,

and **denied** in all other respects.

**IT IS FURTHER ORDERED** that plaintiff's **Motion For Injunctive Relief** (document #88) is **denied.**

**IT IS FURTHER ORDERED** that this matter is **remanded** to the Magistrate Judge for further proceedings.

**IT IS SO ORDERED.**

                                         **/s/ Jimm Larry Hendren**
                                         **JIMM LARRY HENDREN**
                                         **UNITED STATES DISTRICT JUDGE**